## Smallwood v. Commonwealth.

(Decided October 23, 1923.)

### Appeal from Clay Circuit Court.

1. Criminal Law—Evidence Sufficient to Sustain Conviction Notwithstanding Claim of Alibi.—In a prosecution for murder, evidence held to sustain a conviction, though alibi sought to be established had some support in the evidence.

2. Criminal Law—Admissibility of Evidence of Other Crimes on Question of Identity.—Evidence of other crimes is admissible on the question of identity, as where the circumstances tend to show that whoever committed the other crimes must have committed the crime charged.

3. Criminal Law—Evidence of Other Offenses Held Admissible to Show Identity.—In a prosecution for murder, where wounds showed that two guns were used and physical conditions indicated the presence of two persons at the point from which the shots were fired, court did not err in admitting evidence to the effect that prior to the homicide accused and another shot at deceased's wife, and also fired into the house of the deceased, and evidence tending to show the size of the holes and character of the bullets fired into the house.

4. Homicide—Evidence as to Ownership of Gun by Another at Whose House Accused Frequently was Seen Held Admissible.—In a prosecution for murder through the use of a high-powered 30-30 rifle, identity of the killer being the issue, the court properly admitted evidence that a third party had purchased and owned a high-powered 30-30 rifle, and that prior to the homicide accused was frequently seen at the home of such person, and was there on the day of the homicide.

5. Criminal Law—Admission of Evidence as to Finding of Cartridges Not Prejudicial.—The admission of evidence as to the finding of cartridges was not prejudicial where such evidence had no probative value one way or the other.

6. Homicide—Conspiracy May be Shown by Circumstances.—A conspiracy to kill may be shown by the circumstances.

7. Homicide—Instruction as to Conspiracy Warranted by Evidence.—In a prosecution for homicide, where the evidence indicated

that two persons participated in the killing, and tended to show they were defendant and a boon companion, who were enemies of deceased, held, that court did not err in giving a conspiracy instruction.

RAWLINGS & WRIGHT for appellant.

CHAS. I. DAWSON, Attorney General, and THOS. B. McGREGOR, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

Roy Smallwood and Burchell Smith were indicted for the murder of John Taylor. Among the counts of the indictment was one charging conspiracy. On a separate trial Roy Smallwood was found guilty and his punishment fixed at life imprisonment. He appeals.

The insistence that the verdict was not supported by the evidence requires a brief summary of the facts.

John Taylor lived on Goose creek in Clay county. About ten o'clock on the morning of April 13, 1922, he left his home. A few minutes after he left several shots were heard. On the next day his body was found about three-quarters of a mile from his home. There were numerous wounds on his body, some of which appeared to have been inflicted by a high-powered gun and others by a shotgun. A short distance away were found tracks indicating that the murder had been committed by two persons, and some shells from a high-powered gun. Some time prior to the difficulty, Burchell Smith, who was Taylor's son-in-law, had lived with Taylor, but some trouble occurred between them, and Smith moved away. There was also enmity between Taylor and Smallwood, who stated to one witness that he was going to kill Taylor because he had turned him up for whiskey, and to another witness that he would like to shake hands with Taylor with one hand and shoot him with the other. Some months prior to the homicide Smallwood and Smith shot at Mrs. Taylor, the wife of the deceased, who procured a warrant for their arrest. The same night some parties fired into the Taylor home, and some of the shots passed through the space where John Taylor was accustomed to sleep, but his bed had been moved. Some of the bullets were of the same kind as those which caused Taylor's death. Mrs. Taylor and others recognized the parties as Smallwood and Smith. On the morning of the homicide, and before the shots were heard, Taylor's daughters, who had gone after the

cows, saw Smallwood and Smith carrying guns on their shoulders and going in the direction of the place where Taylor's body was found.

On the other hand, Smallwood claimed that he left his home on the morning of the homicide shortly after breakfast and went to the home of James Grubb, who lived almost three miles from where Taylor was found. He got to James Grubb's just before the rain began and remained there at the barn until the rain was over. While there, McKinley Jones came to the barn. After the rain had stopped, he went to Grubb's house and remained there the rest of the day. He was corroborated by Jones, who says he saw him at the barn, and by several of the Grubb family, who claimed to have seen him at the Grubb house. This evidence was coupled with further evidence to the effect that it had practically-ceased raining when Taylor left his home, and that none of the shots were heard until after the rain had stopped. While appellant denied shooting into Taylor's house and all participation in the homicide, he did not deny making the threats against Taylor, but merely stated that if he said the things attributed to him, he did not remember saying them. There was further evidence tending to establish an alibi by Burchell Smith.

In view of the fact that Smallwood and Smith were close friends and were both enemies of Taylor, that Smallwood had threatened Taylor's life and he and Smith had attempted not only to shoot Mrs. Taylor but to assassinate Taylor himself, that the guns employed in this attempt were similar to those with which Taylor was killed, that Smallwood and Smith were seen just before the homicide carrying guns on their shoulders and going in the direction of the place where Taylor's body was found, we are of the opinion that the evidence was sufficient to take the case to the jury and sustain the verdict, notwithstanding the fact that the alibi sought to be established by appellant finds some support in the evidence.

Another ground urged for reversal is that the court erred in admitting evidence to the effect that prior to the homicide appellant and Smith shot at Mrs. Taylor, the wife of the deceased, and also fired into the house of the deceased, as well as evidence tending to show the size of the holes and the character of the bullets fired into the house. The rule that evidence of other crimes is not admissible to show the guilt of the accused is subject to the

well known exception that such evidence is sometimes admissible on the question of identity, as where the circumstances tend to show that whoever committed the other crimes must have committed the crime charged. Thomas v. Commonwealth, 194 Ky. 491, 239 S. W. 776; Romes v. Commonwealth, 164 Ky. 334, 175 S. W. 669. Here the deceased was assassinated. Two kinds of guns were used, and the physical conditions indicated the presence of two persons at the point from which the shots were fired. The evidence complained of showed that prior to that time two persons who were enemies of the Taylor family not only attempted to kill Mrs. Taylor, but to assassinate Taylor and the members of his household. In addition to this, there is further evidence that the parties who killed the deceased used the same kinds of guns employed by those who fired into the Taylor house. Taking into consideration the similarity of the crimes and of the means employed, we conclude that the circumstances tend strongly to show that the persons who had previously attempted to take the lives of Taylor and his family were the same persons who finally succeeded in killing the deceased. That being true, the evidence complained of was admissible on the question of identity.

Complaint is also made of the admission of evidence that Jim Grubb, prior to the homicide, had purchased and owned a high-powered 30-30 rifle, and that some two weeks after the homicide the officers found some 30-30 high-powered cartridges on his premises. As this evidence was coupled with further evidence that the same kind of a gun was used to kill the deceased and to fire into his house, and that prior to the homicide appellant was frequently seen at the home of Jim Grubb and was there on the day of the homicide, we think the evidence was admissible for the purpose of showing that appellant had the opportunity to procure the gun and use it on the occasion in question. There was other evidence in regard to the finding of cartridges of another kind, but as this had no probative value one way or the other, we have reached the conclusion that its admission was not prejudicial.

Another contention is that the court erred in giving a conspiracy instruction. It was not necessary, of course, to show by some one who was present that appellant and Smith actually met and agreed to kill the deceased. On the contrary, a conspiracy may be shown by the circum-

stances. Here we have a case where appellant and Smith were not only boon companions, but were bitter enemies of the deceased and his family. On two previous occasions they had attempted to kill some member of the family. Just before the homicide they were seen together going in the direction of the place where the homicide occurred, each carrying a gun on his shoulder. From these circumstances and others that might be mentioned the jury had the right to infer that appellant and Smith had conspired to take the life of the deceased, and that his life was taken in pursuance of and during the existence of such conspiracy.

On the whole we find no error in the record prejudicial to the substantial rights of appellant.

Judgment affirmed.