## Wooton v. Commonwealth.

(Decided October 23, 1923.)

### Appeal from Perry Circuit Court.

1.  Homicide—Portion of Dying Declaration Excluded, as Not Describing Circumstances of Killing.—In prosecution for murder of a police officer, the court should exclude a portion of a dying statement, detailing what occurred before the deceased and another officer met accused, and should permit the jury to hear only that portion of the statement telling what was said and done at the time of the homicide.

2.  Criminal Law—Evidence of Violations of Prohibition Law by Accused Improper in Homicide Case.—While it was proper in a homicide case to prove that defendant had been drinking, for the purpose of showing his state of mind, there was no justification for the admission of evidence tending to show that he had been guilty of transporting intoxicating liquor, having it in his possession, and giving it to others; such offenses not being inseparably connected with the homicide.

3. **Homicide—Instruction Qualifying Right of Self-Defense Proper.—** Under the evidence in a prosecution for murder of a police officer, held, that the court did not err in giving an instruction qualifying the right of self-defense.

JESSE MORGAN and F. J. EVERSOLE for appellant.

THOS. B. McGREGOR, Attorney General, and C. W. NAPIER, Commonwealth's Attorney, for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

Malcolm Wooton and Charles Wooton were jointly indicted and tried for the murder of Alfred Holland. Charles was acquitted, while Malcolm was found guilty and his punishment fixed at ten years' confinement in the state reformatory. He appeals.

According to the evidence for the Commonwealth, Tom Davidson and the deceased, Alfred Holland, were members of the police force in the city of Hazard. On the night of the homicide they were trying to find out who had fired certain pistol shots which they had heard. On going to the vicinity of the home of Malcolm Wooton, they saw him and his brother, Charley, and a man by the name of Elam standing on the sidewalk. They asked Malcolm if he had heard some shooting. He replied that he had. Malcolm asked if they thought that he did it, and began to curse in the presence of the officers. Holland said, "We ought to arrest that fellow or do something with him for cursing us that way." Thereupon Malcolm, after calling them vile names, told them that if they came back there he would kill them. Thereupon the officers started towards him. Davidson said, "Malcolm, wait there a minute." By that time they had gotten to the door of Malcolm's home. After jumping in the door, he and Charley both drew their pistols and fired. Holland then fired. During the difficulty Holland received the fatal wound. He was afterwards carried to the hospital, where an operation was performed. He died about seventy-two hours thereafter.

According to appellant and his witnesses, he and his brother were in the house. The policemen came to the house and called him to the door. Tom Davidson inquired where the shooting was. Appellant said that he did not know. Thereupon Davidson jerked out his pistol. Appellant said something about the shooting being at the far end of the bridge and having begun in the far end

of the city. Davidson either said to Holland or to appellant that he was a d—— liar. The policemen then ran towards the front door with their pistols out, and appellant said, "Don't come in here." The first shot which Holland fired struck him. Another shot struck his wife and a third shot struck his brother.

The complaint of the admission of Holland's dying declaration is not well founded. On the whole, the evidence showed that it was made under a sense of impending death and after he had abandoned all hope of recovery. However, on another trial the court will exclude that portion of the statement detailing what occurred before the officers met appellant, and will permit the jury to hear only that portion of the statement telling what was said and done at the time of the homicide.

The Commonwealth was permitted to show that some little time before the homicide appellant was drinking intoxicating liquor from a jar in his possession, and that he was handing the liquor to others. Appellant himself was compelled, over his objection, not only to state that he procured the liquor himself and carried it to his home, but to state where he had gotten the liquor. While it was proper to prove that appellant had been drinking for the purpose of showing his state of mind, there was no justification whatever for the admission of evidence tending to show that appellant had been guilty of the three offenses of transporting intoxicating liquor, having it in his possession and giving it to others. The fact that he was guilty of these offenses did not tend directly to show that he was guilty of the homicide, nor were these offenses so inseparably connected with the homicide that the latter could not be proved without proving the former. Not only so, but they did not serve to show identity or guilty knowledge or intent or motive or malice or system of criminal action. It is clear, therefore, that the case does not fall within any of the exceptions to the rule that evidence of other crimes is inadmissible. Romes v. Commonwealth, 164 Ky. 334, 175 S. W. 669. We therefore conclude that the admission of the evidence complained of was prejudicial error.

On the whole we conclude that the court did not err in giving an instruction qualifying the right of self-defense.

Judgment reversed and cause remanded for new trial consistent with this opinion.